101 F.3d 1392
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Vanessa STEWART, Individually and as Parent and Natural
Guardian of Terry Mark Rich and Alicia D. Smith,
Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 95-6024.
 United States Court of Appeals,
Second Circuit.
 July 11, 1996.
 
 David Gerald Jay, Buffalo, NY, for Appellants.
 MaryEllen Kresse, Assistant United States Attorney for the Western District of New York, Buffalo, NY, for Appellee.
 Present: MINER, JACOBS, PARKER, Circuit Judges.
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the Western District of New York, it is hereby
 ORDERED, ADJUDGED, AND DECREED that the judgment be and hereby is AFFIRMED.
 This cause came on to be heard on the transcript of record and was submitted by counsel for appellants and was argued by counsel for appellee.
 Plaintiff-appellant Vanessa Stewart, individually and as parent and natural guardian of Terry Mark Rich and Alicia D. Smith, (together, the "plaintiffs") appeals from a judgment entered in the United States District Court for the Western District of New York (Skretny, J.) dismissing the plaintiffs' false imprisonment claim.
 
 
 1
 In November of 1991, the FBI began investigating Tyrone Stewart, believing that he was a leader of a drug trafficking gang based in Niagara Falls, New York. Tyrone is the stepfather of Terry, age 15, and Alicia, age 12, and he resided at the same address as the plaintiffs. On January 10, 1992, at approximately 3:23 p.m., FBI agents executed a search warrant of the plaintiffs' residence in Niagara Falls. Upon entering the house, the FBI agents encountered Tyrone, Alicia, and Terry. Tyrone was searched and handcuffed and taken to the dining room. Once in the dining room, Tyrone was unhandcuffed and agents proceeded to interview him.
 
 
 2
 When Agents encountered Alicia upstairs she was crying and was dressed in her pajamas. Agents permitted her to change her clothes, and then handcuffed her. Alicia then was taken to the basement where she sat handcuffed on a couch. In the meantime, agents also encountered Terry, handcuffed him, and brought him to the basement. FBI Agent Robert Haley remained with Alicia and Terry in the basement.
 
 
 3
 Dale Stewart, who was Tyrone's 18-year-old son, lived three houses from his father. He noticed the FBI agents in front of his father's house and contacted his stepmother, Vanessa Stewart, at her place of employment. Dale then watched the FBI from across the street. At some point, an FBI agent approached Dale and asked him to identify himself. Once Dale identified himself, the agent told him that Alicia and Terry were in the house and asked him if he wanted to go inside. Agents then searched Dale, and allowed him into the basement to see his brother and sister. In the basement, Dale asked Agent Haley why his sister was handcuffed, and Haley responded that he knew thirty-eight-year-olds that looked as old as Alicia. Dale remained in the basement for 15 to 20 minutes until Vanessa Stewart arrived at approximately 4:15 p.m. At that time, Alicia and Terry were unhandcuffed and released into their mother's custody.
 
 
 4
 On November 3, 1992, plaintiffs commenced this action against the government, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq. ("FTCA"). In their complaint, the plaintiffs asserted causes of action for battery, negligence, false arrest, and unlawful imprisonment. The plaintiffs eventually abandoned all their claims except for their claim of false imprisonment. On January 19, 1995, following a bench trial, the district court found that the government had proved "by a preponderance of the evidence that the detention of Alicia Smith and Terry Rich was reasonable under the circumstances." On January 30, 1995, the plaintiffs' action was dismissed. This appeal followed.
 
 
 5
 The plaintiffs argue that the district court committed plain error when it found that the FBI agents' detention of Alicia and Terry was justified under the circumstances. We disagree.
 
 
 6
 Under 28 U.S.C. § 2680(h) of the FTCA, the United States waives its sovereign immunity "with regard to acts or omissions of investigative or law enforcement officers of the United States Government ... [on] any claim arising ... out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." Pursuant to 28 U.S.C. § 1346(b), such liability is to be determined "in accordance with the law of the place where the act or omission occurred." Because the detention of Terry and Alicia occurred in New York State, New York law applies.
 
 
 7
 To establish a cause of action for false imprisonment under New York law, "the plaintiff must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Broughton v. State, 373 N.Y.S.2d 87, 93 (citation omitted), cert. denied, 423 U.S. 929 (1975). The fourth element--privilege or justification--is the only element that is disputed by the parties on this appeal. The New York Court of Appeals has stated that "[g]enerally, restraint or detention, reasonable under the circumstances and in time and manner, imposed for the purpose of preventing another from inflicting personal injuries or interfering with or damaging real or personal property in one's lawful possession or custody is not unlawful." Parvi v. City of Kingston, 394 N.Y.S.2d 161, 164 (1977) (citation omitted).
 
 
 8
 In the present case, we agree with the district court that the detention of Alicia and Terry was reasonable under the circumstances and in time and manner. The Supreme Court has stated that "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence." Michigan v. Summers, 452 U.S. 692, 702 (1981). In light of the inherent dangerousness of executing the search warrant, it was not unreasonable for the FBI agents, under the circumstances, to believe that they risked personal injury if Alicia and Terry were not detained.
 
 
 9
 Furthermore, we think that the length of the detention was justified. The district court concluded that Alicia and Terry were confined in the cellar for a period of 42 minutes at the most. The children were detained upon their initial encounter with the FBI agents and were released into the custody of their mother upon her arrival. During the children's detention, the search was continuing throughout the house, and Tyrone was being interrogated. In light of the fact that there was no one other than Agent Haley to supervise the children, and because the children were released immediately upon their mother's arrival, we think that the duration of the detention was justified.
 
 
 10
 Finally, we think that the manner of the detention also was justified. There were legitimate reasons for keeping Alicia and Terry handcuffed during the execution of the search warrant. First, Agent Haley was the only agent watching the children. According to the government, other agents were unavailable to assist Agent Haley because they were engaged in either interviewing Tyrone or searching the rest of the house. Agent Haley testified that he would not have felt safe alone with Alicia and Terry if they had not been handcuffed. Furthermore, although the cellar had been searched for people, no thorough search for weapons had been conducted.
 
 
 11
 Plaintiffs argued that the manner in which Terry was detained was especially egregious. Terry testified that he initially was taken to the cellar in his underwear and handcuffed to a pole. He then claims that agents took him back upstairs, allowed him to change into some clothes, and brought him back down to the cellar, but did not re-handcuff him to the pole. The government disputes Terry's story, claiming that he never was handcuffed to the pole. We think that, even if Terry had been briefly handcuffed to a pole, the restraint was justified.
 
 
 12
 We have considered the plaintiffs' remaining contentions, and we find them all to be without merit.